432 So.2d 70 (1983)
Calvin LANE, Sr., As Personal Representative of the Estate of Calvin Lane, Jr., Appellant,
v.
WASTE MANAGEMENT, INC., and American Motorist Insurance Company, Appellees.
Nos. 81-849, 81-850, 81-1654 and 81-1746.
District Court of Appeal of Florida, Fourth District.
April 6, 1983.
Rehearing Denied June 16, 1983.
*71 Goodman, Dunberg & Hochman, P.A., and Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, for appellant.
Pyszka & Kessler, Fort Lauderdale, and Larry Klein, West Palm Beach, for appellees.
DOWNEY, Judge.
On January 5, 1980, Calvin Lane, Jr., was killed by an uninsured motorist while driving his employer's truck in the course and scope of his employment with appellee Waste Management. Thereafter, appellant, Calvin Lane, Sr., the personal representative of the estate of Calvin Lane, Jr., unsuccessfully sought arbitration with appellee American Motorists Insurance Co., Waste Management's liability insurer. Instead, Waste Management and American Motorist filed suit for declaratory relief to determine whether the American Motorist policy issued to Waste Management afforded uninsured motorist coverage for Lane's estate. Appellant filed a counterclaim in which he claimed that the policy in question did provide uninsured motorist coverage to the extent of $500,000. The trial court ultimately granted Waste Management and American Motorist a summary judgment on their complaint and on the counterclaim, finding that no uninsured motorist coverage was afforded the estate under the American Motorist policy.
Calvin Lane, Sr., filed four notices of appeal, each of which was assigned a case number. However, as appellant suggests, since one of the notices is from the final judgment, this appellate review will consider the case as a single plenary appeal from the final judgment in favor of Waste Management and American Motorist.
Initially, Lane, Sr., suggests a procedural point for reversal. He contends that his counterclaim alleged that American Motorist insured Waste Management and Lane for uninsured motorist protection with limits of $500,000; that American Motorist's answer to the counterclaim admitted all of the allegations of the counterclaim, including this critical allegation, because the answer did not deny any of the counterclaim's allegations. Therefore, appellant contends, the counterclaim allegation of $500,000 uninsured motorist coverage stood admitted pursuant to Florida Rule of Civil Procedure 1.110(e).
*72 The record reflects that the American Motorist answer to Waste Management's counterclaim admitted paragraphs 7 and 13, but failed to mention the remainder of the counterclaim. Without intending in any way to be critical of this appellate point, we reject it for two reasons. First, because it is obviously an oversight. The suit was commenced by American Motorist and Waste Management's filing a complaint for declaratory relief wherein they alleged that the policy in question did not provide uninsured motorist coverage and, thus, there was no reason to submit to arbitration. Lane's answer and counterclaim admitted there was a controversy over uninsured motorist coverage and Lane denied that uninsured motorist coverage had been rejected by Waste Management. Second, this argument was not made by Lane in the trial court in support of his motion for summary judgment. Lane's motion did reflect the status of the pleadings, but the conclusion drawn therefrom was not argued as Lane argues it here on appeal. Had it been, the parties concede an amendment would no doubt have been requested and allowed. So, appellant wins on form but appellee wins this one on substance. A party will not be held to an erroneous admission in an answer if he has filed an affirmative pleading containing an allegation that is contradictory to the admission set forth in the answer. Bowen v. American Arlington Bank, 325 So.2d 31 (Fla. 1st DCA 1976).
The more difficult question, and one that has haunted the courts since the advent of the statutory requirement that all liability policies also provide uninsured motorist coverage unless it is rejected, is Lane's contention that the trial court erred in granting American Motorist and Waste Management a summary judgment based on a finding that uninsured motorist coverage had been rejected. The facts, reflected by the record, are that American Motorist became Waste Management's insurer beginning January 1, 1977. Prior to issuance of the policy for 1979 Waste Management decided that it would not obtain uninsured motorist insurance coverage unless such coverage was required by statute in the states where Waste Management operated[1] and then only for minimum limits. Waste Management carries workers compensation insurance on all of its employees, which it felt would cover them if they were injured by uninsured motorists. In addition, such coverage was expensive for Waste Management's type of operation, and under its policy with American Motorist Waste Management had to absorb the first $100,000 of uninsured motorist liability. Thus, when Waste Management's insurance manager, Haufe, met with Knowles, the account executive for Waste Management's insurance agent, Haufe advised him that Waste Management did not want uninsured motorist coverage except in those states that required it, and then only in minimum amounts required. Haufe then advised American Motorist "As respects uninsured motorists, we want to be assured that we are only buying coverage required by statute. We do not want any U.M. coverage that we are not forced to carry." Thereafter, the 1979 policy was issued providing liability coverage for bodily injury in the amount of $500,000 and uninsured motorist coverage for Waste Management's Florida operation in the amount of $20,000.[2] Mr. Haufe was not familiar with the statutory requirements for uninsured motorist coverage in Florida. The record seems clear that American Motorist did not offer Waste Management $500,000 worth of uninsured motorist coverage. The only discussion was to the effect that Waste Management did not want UMI coverage unless compelled by law to carry it. Therefore, there is no written or oral offer of full coverage nor any formal written rejection thereof. The latter problem has finally been resolved *73 statewide by Kimbrell v. Great American Ins. Co., 420 So.2d 1086 (Fla. 1982), wherein the Supreme Court held there is no statutory requirement that the rejection of uninsured motorist full coverage be in writing and that whether the rejection of such coverage was knowingly made is a question of fact.
It appears the essential question to be answered here is whether Waste Management's rejection of UMI coverage was an informed rejection within the meaning of the Florida Statute requiring UMI coverage and the cases construing said statute.
Several cases from this court have held that to be effective a rejection of maximum UMI limits must be an informed rejection, which in turn requires that the insured know that he is entitled to UMI limits equal to the bodily injury limits of the policy. Spaulding v. American Fire & Indem. Co., 412 So.2d 367 (Fla. 4th DCA 1982); General Accident Fire & Life Assurance Corp. v. MacKenzie, 410 So.2d 558 (Fla. 4th DCA 1982). The Supreme Court has recently confirmed the informed rejection requirement in Kimbrell v. Great American Ins. Co., supra. In the latter case the Supreme Court also pointed out that whether a rejection of such coverage was an informed one is a question to be determined by the trier of fact.
In the present case Lane, Sr., contends that, since Mr. Haufe, the insurance manager for Waste Management, was not familiar with the provisions of Section 627.727, Florida Statutes (1977), any purported rejection of uninsured motorist coverage less than the bodily injury limits was not a knowing rejection. While recognizing the requirement that the declination of such coverage must be knowledgeable or it would be a nullity, we think that a jury could conclude on the facts of this case that, when Waste Management said it did not want any uninsured motorist coverage, it was an informed rejection; that Waste Management meant it wanted no UMI coverage; that this rejection was not the uninformed decision of some "mom and pop" couple unfamiliar with insurance generally, but rather that it was the considered judgment of a large national corporation whose trucks and business operate throughout the United States and Canada, a corporation that in its business judgment felt its employees were adequately covered by the company's Worker's Compensation Insurance; that the company's judgment was also influenced by the fact that, even if it carried uninsured motorist coverage, it would still be required to pay the first $100,000 of uninsured motorist liability. On the other hand, following appellant's argument, the jury might find that the Waste Management rejection was not an informed one. Thus, granting a summary judgment for appellee was improper. Kimbrell v. Great American Ins. Co., supra.
All of the foregoing had to do with the issuance of the 1979 policy. Since the accident happened in 1980, another policy controls, and Lane contends that the 1980 policy was a new policy rather than a renewal so that, regardless of what transpired prior to issuing the 1979 policy, a new rejection of UMI coverage was necessary in the issuance of the 1980 policy. The rule is clear that, if the 1980 policy contained a material change from the 1979 policy, the insurer was required to offer the insured uninsured motorist coverage in the same amount as the bodily injury limits contained in the policy. Spaulding v. American Fire & Indem. Co., 412 So.2d 367 (Fla. 4th DCA 1982). In his third point on appeal Lane argues that there was a question of fact as to whether the 1980 policy was a renewal or whether material changes had been made so as to require the insurer to offer maximum uninsured motorist insurance limits. While the 1979 policy was not made a part of the record, Lane points to testimony that American Motorist submitted a six page insurance proposal to Waste Management concerning the 1980 policy; that meetings were held prior to its issuance to discuss the proposal and, although Waste Management wanted the uninsured motorist coverage to be the same as in the 1979 policy, Waste Management did make "new requests" to American Motorist and the 1980 policy did *74 incorporate these "new requests." Since the burden of proof was on Waste Management on its motion for summary judgment to demonstrate no genuine issue of material fact, it was Waste Management's burden to prove the nature of the changes so as to show the 1980 policy was a renewal contract and not a new and materially different policy. Additionally, Lane argues that there are reasonable inferences to be drawn from the evidence such as that the "new requests" could have been material changes requiring compliance with Section 627.727. Haufe's deposition indicates that, prior to the issuance of the 1980 policy, the same study, negotiations, and conferencing regarding Waste Management's insurance requirements were engaged in by Waste Management, its insurance agent, and the people at American Motorist; that Waste Management remained firm in its intention not to carry uninsured motorist insurance unless required by law, and then in minimal limits, and this was communicated once again to the insurance agents involved. All of which simply demonstrates that a summary judgment in favor of appellees was not indicated; on the contrary, a genuine issue of material fact appears to exist on this point also.
The final point on appeal suggests the trial court erred in granting summary judgment for Waste Management and American Motorist, finding that there was no uninsured motorist coverage afforded under the policy in question when the policy expressly contained $20,000 of such coverage.
It appears that, although Waste Management advised American Motorist it wanted no uninsured motorist insurance unless required by statute, American Motorist issued the policy in 1979 with $20,000 in uninsured motorist coverage. When the 1980 policy was issued the understanding once again was that no uninsured motorist insurance coverage would be issued, but once again the 1980 policy was issued with $20,000 of uninsured motorist insurance coverage. Lane, Jr., was killed in January 1980, and it was not until later in the year 1980 and after Lane, Sr., had claimed uninsured motorist coverage that American Motorist and Waste Management realized the policy contained $20,000 worth of said coverage. At that point they agreed it was a mistake and appropriate forms were signed eliminating the uninsured motorist coverage.
Predictably, Lane, Sr., claims the modification of the policy was "engineered" by Waste Management and American Motorists without any consideration of Lane's third party beneficiary rights. Waste Management contends on appeal that Lane did not argue this point in the trial court. The transcript of the summary judgment hearing reflects otherwise. Counsel did argue this point, although not extensively  Lane's big thrust was toward the $500,000 uninsured motorist insurance coverage on the grounds argued in the earlier appellate points. In any event, should appellees ultimately prevail on the informed rejection issue so that the maximum limits of UMI coverage are not available to appellants, there remains a genuine issue of material fact as to whether there is at least $20,000 worth of UMI coverage.
With regard to Lane's application for attorney's fees, it is granted conditionally upon his successfully obtaining a judgment on the uninsured motorist insurance coverage in the trial court. If he is successful in that regard, the trial court shall determine the amount of a reasonable attorney's fees for Lane for services rendered by his counsel on this appeal.
The summary judgment awarded Waste Management and American Motorist is reversed and remanded for further proceedings.
GLICKSTEIN, J., concurs.
ANSTEAD, J., dissents with opinion.
ANSTEAD, Judge, dissenting:
Because I can discern no meaningful distinction between this case and the cases of Del Prado v. Liberty Mutual Insurance Co., 400 So.2d 115 (Fla. 4th DCA 1981) and Liberty Mutual Insurance Co. v. Wright, 406 So.2d 1261 (Fla. 4th DCA 1981), wherein *75 we concluded there was no coverage under circumstances similar to those involved herein, I must dissent. I agree with the majority's holding, however, as to the $20,000 coverage that actually existed on the date of the accident.
NOTES
[1] Waste Management does business in thirty states and in Canada.
[2] Both Waste Management and American Motorist contend inclusion of the $20,000 uninsured motorist coverage was a mistake. That question is involved in appellant's final point on appeal.